UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>NORRIS J. REID and<br>CHERYL REID,<br><br>　　　　　　　　　Debtors<br><br>CAROLYN A. BANKOWSKI,<br>CHAPTER 13 TRUSTEE,<br><br>　　　　　　　　　Plaintiff<br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　　　　　　Defendant | Chapter 13<br>Case No. 09-17166-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 10-1354 |

**MEMORANDUM OF DECISION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

By Count I of her complaint in this adversary proceeding, the chapter 13 trustee, Carolyn Bankowski (the "Trustee"), exercising her "strong arm power" under 11 U.S.C. § 544(a)(3), seeks to avoid the mortgage held by defendant Wells Fargo Bank, N.A. ("Wells Fargo") on the debtors' residence. On the same basis, she also objects in Count II to Wells Fargo's proof of claim insofar as it claims secured status, and she asks in Counts III and IV that Wells Fargo be ordered to remit to the Trustee all payments that the Trustee and debtors have made to Wells Fargo since the commencement of this case pursuant to a "cure and maintain" provision in the debtors' confirmed chapter 13 plan, for redistribution of the same to unsecured creditors. Wells Fargo now seeks summary judgment, arguing that the order confirming that plan precludes the relief sought in all four counts. The Court agrees. The plan is res judicata as to the relief requested.

**FACTS AND PROCEDURAL HISTORY**

There is no genuine issue as to any material fact. The facts, including relevant procedural history, are as follows.

By virtue of a deed dated and recorded on May 27, 2004, Norris and Cheryl Reid (the "Debtors") became the owners of the real property located at 119 Vesey Street, Brockton, Massachusetts (the "Property"). On or about July 18, 2005, the Debtors granted a mortgage on the Property to Mortgage Electronic Registration Systems, Inc. as nominee for Taylor, Bean and Whitaker Mortgage Corp. (the "Mortgage"). The Mortgage was later assigned to Wells Fargo.

On or about July 29, 2009, the Debtors filed a joint petition for relief under chapter 13 of the Bankruptcy Code. On August 27, 2009, Wells Fargo filed a proof of claim in the case in the amount of $271,890.10. Wells Fargo indicated in the proof of claim that its claim was secured by the Mortgage. On September 16, 2009, Wells Fargo filed an amended proof of claim, which decreased the amount of the claim to $271,606.96. No one objected to the proof of claim or to the amended proof of claim.

On August 7, 2009, the Debtors filed a chapter 13 plan (the "Plan"), which included the following relevant features. First, the claim of Wells Fargo was treated entirely in the section designated "Secured Claims." Specifically, in that section, the Plan stated that prepetition arrears in the amount of $2,000.00 would be paid "through the plan," meaning through the chapter 13 trustee, and that Wells Fargo's claim, described as "mortgage," would otherwise be paid directly to Wells Fargo. By this somewhat cryptic language, the Debtors were electing to treat Wells Fargo's claim under 11 U.S.C. § 1322(b)(5), known as the "cure and maintain" option.[1] The Plan elsewhere specified that no secured claim would be modified by the Plan. Second, the Plan provided for a distribution of $14,110.60 through the Trustee to unsecured creditors, whose claims the plan quantified in total at $56,439.00, for a dividend of no less

---

[1] In relevant part, § 1322(b)(5) states that a chapter 13 plan "may--notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).

than 25 percent. Third, to fund the distributions to be made through the Trustee, the Plan obligated the Debtors to make 60 equal monthly payments of $299.00 to the Trustee, for total plan contributions of $17,900.40. And fourth, the Plan included a liquidation analysis that indicated (i) that the fair market value of the Property was $220,000, (ii) that there was no equity in the Property for distribution to unsecured creditors because liens on the property, quantified at $268,593.00, exceeded its value, (iii) that the Debtor's personalty had no value that was not subject to a lien or an exemption, and, for these reasons, (iv) that $0 would be available for distribution to unsecured creditors were this case in chapter 7. The purpose of the liquidation analysis in a chapter 13 plan is to show that the plan satisfies 11 U.S.C. § 1325(a)(4), known as the "best interest of creditors test."[2]

No party objected to the Plan and no changes were made to it. On December 29, 2009, the Court entered an order confirming the Plan (the "Confirmation Order"). In the section of the Confirmation Order entitled "Summary of Disbursements to be Made Under the Plan," the Confirmation Order stated that there were no modified secured claims, and it set forth the treatment of Wells Fargo's claim in the subsection entitled "Unmodified Secured Claims." There the Confirmation Order stated:

> Wells Fargo Home Mortgage [*i.e.*, Wells Fargo] is retaining its lien on 119 Vesey Street, Brockton, MA. The Debtor(s) shall continue to make regular monthly payments in accordance with the contract with Wells Fargo Home Mortgage. Wells Fargo Home Mortgage will be paid its pre-petition arrearage in the sum of $2,000 over 60 months in the sum of $33.34.

In addition, the Confirmation Order also included the following standard language:

> Unless otherwise ordered by the Court, all property of the estate as defined in [11] U.S.C. §§ 541 and 1306, including, but not limited to, any appreciation in the value of real property owned by the debtor as of the commencement of the case, shall remain property of the estate during the term of the plan and shall vest in the debtor(s) only upon discharge.

---

[2] As a condition of plan confirmation, subsection (a)(4) requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4).

3

After entry of the Confirmation Order, no appeal was taken from it. No party has moved to vacate, revoke, amend, or modify it.

On December 15, 2010, the Trustee filed the four-count complaint that commenced the present adversary proceeding. In Count I, she alleges and argues that that the notary acknowledgement for the Mortgage fails to contain a specific reference to the Debtors as the persons who personally appeared before the notary, that this is a material defect that should have prevented the Mortgage from being recorded, and that, by virtue of the power she enjoys under 11 U.S.C. § 544,[3] she may avoid the Mortgage. On that basis, she demands in Count I that the Mortgage be avoided and that the Debtors be declared to take the Property free and clear of the defective Mortgage.[4] In Count II, the Trustee objects to Wells Fargo's proof of claim and amended proof of claim (together, the "Proof of Claim"),[5] arguing that, in view of the avoidance requested in Count I, the claim should be allowed as an unsecured claim, not as a secured claim. In Count III, the Trustee contends that, in view of the avoidance requested in Count I, Wells Fargo is not entitled to retain some $1,596.06 that the Trustee paid to Wells Fargo pursuant to the confirmed Plan, and she demands an order that these be refunded to her. And in Count IV, the Trustee contends that, in view of the avoidance requested in Count I, Wells Fargo is not entitled to retain the mortgage payments that the Debtors have made directly to Wells Fargo since the filing of their bankruptcy petition, and she demands an order requiring that these too be refunded to her "for redistribution to creditors." Here it is clear that by "creditors" she means the unsecured creditors, in

---

[3] The complaint does not specify the part of § 544 on which the Trustee is relying. Her brief in opposition to the Motion for Summary Judgment specifies subsection (a), but she has been no more specific than that. She relies on the holdings in *Agin v. Mortgage Electronic Registration Systems, Inc. (In re Giroux)*, 2009 WL 1458173, 2009 Bankr. LEXIS 3429 (Bankr. D. Mass. 2009) *aff'd* 2009 WL 3834002, 2009 U.S. Dist. LEXIS 106872 (D. Mass. 2009), and in *In re Bower*, 2010 WL 4023396, 2010 Bankr. LEXIS 3641 (Bankr. D. Mass. 2010). In both, the operative provision was § 541(a)(3).

[4] The complaint asks that the Property be declared to be the Debtors', not the estate's. It is unclear whether this is a drafting error. Elsewhere the Trustee has represented that she is bringing this complaint for the estate. She is the representative of the estate. 11 U.S.C. § 323(a). And any transfer avoided under § 544 is automatically preserved for the benefit of the estate. 11 U.S.C. § 551.

[5] The proof of claim and the amended proof of claim differ only in amount. The difference is irrelevant to the Trustee's complaint, which concerns only the secured status of the claim they both assert.

which she would, upon avoidance of Wells Fargo's mortgage, include the claim of Wells Fargo. Although she does not expressly say so in Count III, I understand that her Count III recovery is being requested for the same purpose, for redistribution on a pro rata basis to unsecured creditors.

In its answer to the Trustee's complaint, Wells Fargo pleaded as affirmative defenses that the various counts are barred, wholly or in part, by "the doctrine of res judicata and/or collateral estoppel" and by "the doctrine of estoppel." Now, by the motion before the Court, Wells Fargo seeks summary judgment on the basis of the affirmative defenses of res judicata and judicial estoppel. The motion does not challenge the Trustee's case in chief.

**ARGUMENTS OF THE PARTIES**

Wells Fargo advances four arguments. First, by operation of the principles of claim and issue preclusion and of 11 U.S.C. § 1327(a), a confirmed chapter 13 plan is res judicata as to all issues that were or could have been decided in the confirmation process. The alleged notarization defect that forms the basis of the Trustee's complaint was discoverable in time to have been raised as an objection to plan confirmation but was not timely raised. Even the *Giroux* decision, on which the Trustee relies for the proposition that the defect is a basis for avoidance under § 544(a), was decided well before confirmation. Absent fraud or concealment, neither of which is alleged here, late discovery of a basis to change the treatment of a secured claim is not cause to revisit an issue decided by a plan's confirmation. Second, the doctrine of judicial estoppel bars the Trustee from taking a contrary position now from the position that she took earlier, when, by her lack of objection to the plan's confirmation, she effectively took the position that the Mortgage was valid and effective. Third, under 11 U.S.C. § 1330(a), an order of confirmation may be revoked only for fraud and only within 180 days after confirmation, but the Trustee has neither alleged fraud nor moved within 180 days. And fourth, although 11 U.S.C. § 1329(a) permits a trustee to modify a plan after confirmation, the Trustee has not shown the requisite cause, and the modification she seeks to effect is not among those permitted.

5

The Trustee responds with a raft of arguments of her own.  First, § 1327(a) expressly makes a confirmed chapter 13 plan binding  only on the debtor and all creditors; its silence as to the trustee must be construed as indicating that a confirmed plan is not binding on the trustee, and therefore the plan has no preclusive effect on her.  Second, under 11 U.S.C. § 544(a), a trustee in bankruptcy is vested with the rights of a bona fide purchaser of the debtor's property for value, without regard to any actual knowledge she may have had; therefore, she must be deemed to have had no knowledge of the Mortgage as of the date of confirmation, and for lack of knowledge, she cannot be bound by the Confirmation Order.  Third, for this same reason, the Trustee cannot be deemed to have taken a position contrary to the position she now advances, and therefore judicial estoppel cannot apply.  Fourth, the avoidability of a lien under § 544(a) is usually adjudicated by adversary complaint, not by the confirmation of a chapter 13 plan; the plan and its confirmation process may be used for that purpose, but unless a plan provides clear notice to the contrary, the plan will not be construed to have preclusive effect on an avoidance claim, and this plan did not provide the requisite notice.  Fifth, the Confirmation Order did not constitute an adjudication of the counts she now advances; her avoidance count was not actually litigated, and a judgment in her favor on the present complaint would not impair, destroy, challenge, or invalidate the enforceability or effectiveness of the confirmed Plan.   Sixth, by establishing a two-year statute of limitations in 11 U.S.C. § 546(a) for a trustee to bring an avoidance action under § 544, Congress intentionally excluded these actions from the binding effect of a confirmation order.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is no genuine issue of material fact and, on the uncontroverted facts, the moving party is entitled to judgment as a matter of law.  Here, summary judgment is sought on the basis of two affirmative defenses, res judicata and judicial estoppel, as to which Wells Fargo would bear the burden of proof at trial.  Where the burden of proof at trial would fall on the party seeking summary judgment, that party must support its motion with evidence—in the form

6

of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its affirmative defense. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under Fed. R. Civ. P. 50(a). Provided it does so, the burden then shifts to the opposing party to adduce evidence that establishes a genuine issue of material fact as to at least one essential element of the moving party's defense. The Court must view all evidence in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. The ultimate burden of proving the absence of a genuine issue of material fact remains at all times on the moving party. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment.

**DISCUSSION**

Wells Fargo seeks summary judgment on the strength of either of two affirmative defenses, the doctrines of res judicata and of judicial estoppel.

a.  **Judicial Estoppel**

Wells Fargo argues that the doctrine of judicial estoppel bars the Trustee from taking a contrary position now from the position that she took earlier. In support of this argument, Wells Fargo takes the position that, by her lack of objection to the Plan's confirmation, the Trustee effectively took the position that the Mortgage was valid, effective, and unavoidable. In order to prevail on the defense of judicial estoppel, Wells Fargo must show two things: "First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive. Second, the responsible party must have succeeded in persuading a court to accept its prior position." *Alternative Sys. Concepts v. Synopsis, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004). The evidence adduced in support of the present motion establishes neither.

7

First, the Trustee did not earlier take a position that is directly inconsistent with the position she now advances. She filed no objection to confirmation and articulated no position at all. I need not determine whether her lack of objection may be construed as a representation because, if so, the representation need be nothing more than that she was then unaware of any basis not to confirm the Plan, a position that is not directly contrary to her present position. On summary judgment, inferences must be drawn in favor of the non-moving party. Therefore, even if the record supported the less benign inference that, by her silence, the trustee represented affirmatively that there exists no basis to avoid Wells Fargo's lien, the Court would be obligated to accept the inference that favors the Trustee.

Second, the evidence does not show that the Trustee succeeded in persuading a court to accept her prior position. The Trustee filed nothing. It is the Debtors who filed the plan and who persuaded the Court to accept *their* position. For both reasons, Wells Fargo is not entitled to summary judgment on the strength of its judicial estoppel defense.

**b.** **Res Judicata**

    **i.** **No Issue of Material Fact**

Wells Fargo's stronger defense is res judicata. Because it would bear the burden of proof at trial on this defense, Wells Fargo must support its motion for summary judgment with evidence sufficient to establish the fact and effect of the order for which it claims preclusive effect. It has done so, and it has further established that there are no genuine issues as to the material facts. The parties disagree only on whether, on the uncontroverted facts, Wells Fargo is entitled to judgment as a matter of law.

    **ii.**      **Matters Not in Controversy**

To clarify what is in issue and what is not, I begin by clarifying the procedural posture of the plan. The plan has been confirmed. No appeal has been taken from the confirmation order, and the time to appeal has long passed. Under § 1330(a), a party in interest may request revocation of a confirmation order if the order was procured by fraud, provided the request is made within 180 days after entry of the confirmation order,[6] but no party has moved to revoke the plan, and the 180-day period has passed. The Trustee's complaint in this adversary proceeding does not purport to be a motion to revoke under § 1330(a), and the Trustee does not allege that the Confirmation Order was procured by fraud. No motion to alter or amend the Confirmation Order has been filed under Fed R. Civ. P. 59, made applicable by Fed. R. Bankr. P. 9023, and no motion for relief from judgment has been filed under Fed R. Civ. P. 60, made applicable (with limitations) by Fed. R. Bankr. P. 9024; nor does the Trustee contend that her complaint is a motion to amend or for relief from judgment. Section 1329(a) permits a debtor, a trustee, or a holder of an allowed unsecured claim to request modification of a plan after confirmation,[7] but no one has sought to modify the plan under § 1329(a), and the Trustee does not contend that her complaint seeks relief under § 1329. Nor could the Trustee's complaint be construed as a proceeding to revoke, modify, amend, or vacate the confirmation order: the debtor and other affected creditors would be necessary parties to any such effort, but they are not parties to this proceeding. In short, the confirmation order is valid and subsisting, the plan remains effective, and neither is subject to a pending challenge. Wells Fargo's arguments under §§ 1329(a) (against plan modification) and 1330(a) (against revocation of the confirmation order) are therefore moot, and the only issue is whether the confirmation order precludes the relief the Trustee now seeks.

---

[6] 11 U.S.C. § 1330(a) ("On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.").

[7] 11 U.S.C. § 1329(a).

### iii.   Preclusive Effect of a Chapter 13 Confirmation Order

Wells Fargo argues that the confirmed plan is res judicata as to all issues that were or could have been decided during the confirmation process, and that these include the subject matter of the four counts of the Trustee's complaint. The Trustee responds with arguments in two categories: the confirmation order is not binding on her; and the plan did not address the issues presented by her complaint.

The defense at issue is res judicata, which refers generally to the preclusive effect of a judgment in one proceeding on claims or issues raised in a later proceeding. Wells Fargo relies here on claim preclusion. As the order for which Wells Fargo seeks preclusive effect is an order of a federal court, federal preclusion principles apply. *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978 (1st Cir. 1995). "The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits." *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 30 (1st Cir. 1994). Once these elements are established, claim preclusion "bars the relitigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation." *Id*. "[C]onfirmation of a Chapter 13 plan customarily is res judicata as to all issues that were or could have been decided during the confirmation process." *Carvalho v. Fannie Mae (In re Carvalho)*, 335 F.3d 45, 49 (1st Cir. 2003).

The first two elements are undisputedly present here. First, the Confirmation Order is a final order on the merits of the Plan. Second, the Trustee and Wells Fargo were parties to the confirmation process. Wells Fargo was a party as a creditor and claimant whose claim the Plan was addressing. The Trustee was a party pursuant to her obligation to appear and be heard at any hearing that concerns confirmation of a plan, 11 U.S.C. § 1302(b)(2)(B) ("The trustee shall appear and be heard at any hearing that concerns confirmation of a plan."), and pursuant to her right as a party in interest to object to

confirmation of a plan, 11 U.S.C. § 1324(a) ("A party in interest may object to confirmation of the plan.").

For these reasons, the Confirmation Order should bind the Trustee with respect to any claim as to which the third requirement of claim preclusion is also satisfied. Nonetheless, the Trustee argues on two grounds that the Confirmation Order does not bind her.

### A.      Section 1327(a)

Section 1327(a) states: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The Trustee argues that because § 1327(a) expressly makes a confirmed chapter 13 plan binding on the debtor and all creditors but does not mention the trustee, its silence as to the trustee must be construed as indicating that a confirmed plan is not binding on the trustee. Wells Fargo responds that § 1327(a) should not be so construed because (i) § 1327(a) does not expressly exclude the trustee from its binding effect, (ii) the Trustee's construction would lead to absurd results, (iii) the Trustee's construction is impossible to reconcile with §§ 1329 and 1330, with Chapter 13 in general, and with the necessity of finality, and (iv) the weight of authority treats a confirmation order as binding on all parties.

The Trustee is correct that as a general rule of construction, where Congress includes particular language in one section of a statute but omits it in another section of the same statute, it is generally presumed that the omission was purposeful. *Cf. Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). However, this rule of construction only creates a presumption, and the presumption can be overcome by evidence of contrary intent. Here, the evidence of contrary intent is overwhelming.

First, several provisions of chapter 13 expressly treat the trustee as bound by a confirmed plan. Section 1326(a)(2) states that "[i]f a plan is confirmed, the trustee shall distribute any such payment

11

[*i.e.*, preconfirmation plan payments to the trustee] in accordance with the plan as soon as practicable." 11 U.S.C. 1326(a)(2).  Section 1326(c) adds that, "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."  11 U.S.C. § 1326(c).  These provisions make clear that a chapter 13 trustee is obligated to effectuate the distributions required of her by a confirmed plan; to that extent, at least, the plan binds the trustee.  Also, § 1329(a) states that after confirmation, the plan may be modified in certain ways "upon request of the debtor, the trustee, or the holder of an allowed unsecured claim"; and § 1330(a) permits any "party in interest"—in a chapter 13 case, the chapter 13 trustee is a party in interest[8]— to request revocation of a plan for fraud within 180 days after confirmation.  Both § 1329(a) and § 1330(a) are expressly made as applicable to the trustee as to the debtor, but this would be unnecessary if the confirmed plan did not already bind the trustee as it does the debtor.

     Second, the confirmation of a chapter 13 plan is a collective and omnibus proceeding, one that attempts, as much as possible, to address the obligations of a debtor to all his or her creditors, and the priority among those creditors, at once.  It would be unusual and unworkable for the order that confirms such a plan to bind the debtor and the creditors but not also the trustee.  If the plan is not final as to all, it is not final as to any.  Where the confirmation of a plan fixes a matrix of interdependent rights, it is often difficult to alter one part without affecting many others.  In this kind of proceeding, finality is not finality unless it applies to all.  Especially where the trustee's role after confirmation is to collect payments from the debtor and distribute those payments to creditors, it is difficult to imagine how the plan can be final if it is not binding on her.  Conversely, if a confirmed plan is truly binding on the debtor and creditors, as § 1327(a) says it is, then the rights and duties of debtor and creditors are fixed, and it is

---

[8] See 11 U.S.C. § 1302(b), enumerating trustee's duties.  "The trustee shall appear and be heard at any hearing that concerns . . . (B) confirmation of a plan; or (C) modification of the plan after confirmation."  11 U.S.C. § 1302(b)(2)(B) and (C).  See also 11 U.S.C. §§ 1324(a) ("A party in interest may object to confirmation of the plan."), 1325(b)(1) (contemplating that the trustee might object to the confirmation of the plan), and 323(a) ("The trustee in a case under this title is the representative of the estate.").

hard to imagine what, if anything, in the plan remains open, not final, for the trustee. Virtually all of a trustee's concerns with a plan are concerns with the rights and duties of the debtor and creditors. In short, the notion that a plan can be final and binding as to the debtor and creditors but not the trustee does not compute.

Third, for the reasons articulated in the two preceding paragraphs, had Congress intended for a confirmed plan not to bind the trustee, Congress would likely have said so expressly, not by omission. Congress would likely have also specified the respects in which the plan is not final. That it did not do so is evidence that it did not intend to exclude the trustee from the binding effect of the plan.

Fourth, the case law on this issue overwhelmingly holds that a confirmed plan binds the trustee.[9] The Trustee has cited only one case to the contrary, *In re Erwin*, 376 BR. 897 (Bankr. C.D. Ill. 2007). The *Erwin* court reached its conclusion without discussion of the above issues or of the contrary authority, and therefore its holding is not persuasive.

For these reasons, I conclude that although not listed in § 1327(a), a chapter 13 trustee is bound by a confirmed plan.

---

[9] *Celli v. First Nat'l Bank of N. New York (In re Layo)*, 460 F.3d 289 (2d Cir.2006) (chapter 13 confirmation order is res judicata with respect to trustee's post-confirmation attempt to avoid a lien on the debtor's property); *Boyajian v. Vargas (In re Vargas)*, 2012 WL 2450170, *4 (B.A.P. 1st Cir. 2012) (although not listed in § 1327(a), a chapter 13 trustee is bound by a confirmed plan); *Ledford v. Brown (In re Brown)*, 219 B.R. 191, 194 (B.A.P. 6th Cir. 1998) (while the plain language of § 1327(a) does not mention the trustee, all participants in the bankruptcy case are barred by the doctrine of res judicata from asserting matters they could have raised in the bankruptcy proceedings; a trustee is considered a party to a confirmation hearing and as such is bound by the proceeding); *In re Fluellen*, 446 B.R. 612, 618 (Bankr. M.D. Ga. 2011), *aff'd* 2012 WL 74874 (M.D. Ga. 2012) (although not listed in § 1327(a), a chapter 13 trustee is bound by a confirmed plan); *In re Smith*, 2004 Bankr. LEXIS, 11, 17-18 (Bankr. W.D. Mo. 2004) (while the plain language of § 1327(a) does not include the trustee, it is a distinction without a difference, and the res judicata effect of a confirmed plan extends to the trustee); *In re Hallmark*, 225 B.R. 192, 195-96 (Bankr. C.D. Cal. 1998) (the trustee is bound by confirmation of the plan, and the only way to change that is to seek modification); *In re Lee*, 189 B.R. 692, 694 (Bankr. M.D. Tenn. 1995) ("The binding effect of confirmation commits the Chapter 13 Trustee as well."); *In re Wilson*, 157 B.R. 389, 390 (Bankr. S.D. Ohio 1993) (principles of claim preclusion or res judicata bar a trustee from raising as grounds for modification facts that were known and could have been raised prior to confirmation of the debtor's plan).

**B.    11 U.S.C. § 544(a)(3)**

In the alternative, the Trustee argues that, even if she is generally bound by a confirmed plan, she is not bound as to her lien-avoidance action under § 544(a) because, in bringing that action, she stands in the shoes of a hypothetical bona fide purchaser for value, without regard to any actual knowledge she may have had; therefore, she must be deemed to have had no knowledge of the mortgage as of the date of confirmation, and for lack of knowledge, she cannot be bound by the confirmation order.  This argument fails first because it confuses the substantive rights of the trustee under § 544(a) with her procedural rights and obligations, and second because, even if § 544(a)(3) could be construed to confer upon her a constructive ignorance that the plan placed her avoidance rights in issue, § 544(a)(3) extends that constructive ignorance only to the date of the bankruptcy filing and does not insulate her from the burden of her postpetition knowledge.  Section 544(a)(3) states:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).  This language gives the trustee the avoidance rights of a hypothetical bona fide purchaser as of the commencement of the case.  By definition, a bona fide purchaser cannot have had actual knowledge of the encumbrance in question at the time of purchase.  Accordingly, the ignorance imputed by this section is ignorance of Wells Fargo's mortgage.  *In re Bower*, 2010 WL 4023396, at *6 ("The natural interpretation of this language is that actual knowledge *of the encumbrance* will never prohibit a trustee from invoking § 544(a)(3)." (emphasis added)).  And the time of the imputed ignorance is as of the commencement of the case, the time of the hypothetical purchase.  It is not ignorance of postpetition proceedings, such as the plan, that place the perfection of the mortgage and

14

the trustee's avoidance powers in issue. The Trustee is not here arguing that she had no actual or constructive knowledge that the plan put these matters in issue. Instead, she is asking the court to cloak her with imputed procedural ignorance. That is neither the purpose nor the effect of § 544(a)(3). The Trustee is therefore bound by the Confirmation Order notwithstanding that she is proceeding under § 544(a)(3).

### iv.  Identity of Causes of Action

The third and final requirement of claim preclusion is identity of cause of action. The Court must determine, as to each count in the Trustee's complaint, whether it "[was] or could have been decided during the confirmation process."  *Carvalho v. Fannie Mae (In re Carvalho)*, 335 F.3d at 49. The complaint states four counts:  one to avoid the Mortgage pursuant to § 544(a); another to disallow Wells Fargo's claim as a secured claim; and two to recover payments that the Debtors made to Wells Fargo pursuant to the Plan. The Trustee advances three arguments for the proposition that the counts of her complaint were not among the causes of action determined by the Plan, but her arguments do not apply equally to all four counts and appear to have no bearing at all on Counts III and IV, both for recovery of payments.

### A.  Counts III and IV

I begin with the easier counts. In Counts III and IV, the Trustee contends that, in view of the avoidance requested in Count I, Wells Fargo is not entitled to retain either the funds that the Trustee paid to Wells Fargo pursuant to the confirmed Plan or the mortgage payments that the Debtors have made directly to Wells Fargo since the filing of their bankruptcy petition, and she demands an order requiring that these be refunded to her "for redistribution to creditors."[10] The Plan as confirmed

---

[10] The qualification "for redistribution to creditors" appears only in Count IV, but the Trustee clearly has the same purpose in mind in Count III. In any event, if the Trustee were to prevail on these counts, the result would be a redistribution of payments.

15

adjudicated and determined (among other things): (i) that, on account of Wells Fargo's claim, the Debtors would cure the arrearage on Wells Fargo's debt over the 60-month term of the plan by payments through the Trustee; (ii) that the arrearage to be cured was in the amount of $2,000.00; (iii) that, also on account of Wells Fargo's claim, the Debtor's would continue to make the payments required by the Mortgage loan over the life of the Plan; (iv) that the forgoing treatment of Wells Fargo's claim under 11 U.S.C. § 1322(b)(5) was appropriate[11]; and (v) by virtue of the treatment of Wells Fargo's claim in the part of the Plan for secured claims, that Wells Fargo's claim would not participate to any extent in the distribution to unsecured claimants. These are directly contrary to the relief requested by the Trustee in Counts III and IV, where she essentially seeks a determination that these features of the plan were inappropriate and should be vacated *ab initio*.

The arguments that the Trustee makes against identity of issues cannot plausibly be asserted as to these counts. The distributions that are the subject of Counts III and IV were clearly set forth in the Plan, so the Trustee cannot contend that she lacked good notice that their propriety was in issue. Distributions to creditors are normally determined through a plan, not through an adversary proceeding, so she cannot argue that the chosen procedural vehicle was not an appropriate one for the subject matter of *these* counts. The two-year statute of limitations in 11 U.S.C. § 546(a)(1), which applies to avoidance actions under § 544, cannot plausibly be said to apply to objections to a plan's proposed distribution scheme, even if the objection is founded on an avoidance right. And the Trustee cannot plausibly maintain, as to these counts, that a judgment in her favor would not impair or contradict the confirmed Plan. The Plan requires that the Debtors make certain payments to Wells Fargo; the relief requested in Count III and IV would require that those payments be remitted to the Trustee for

---

[11] By operation of § 1328(a)(1) and (c)(1), a claim provided for under § 1322(b)(5) is automatically excepted from any discharge the debtor might receive later in the case, either upon completion of plan payments or otherwise. 11 U.S.C. § 1328(a)(1) and (c)(1).

redistribution.  These outcomes are plainly contradictory, and there is identity of causes of action as to Counts III and IV.

For these reasons, the Confirmation Order precludes Counts III and IV.  It follows that even if the Trustee were to prevail on Counts I and II, she would be bound by the Plan's distribution scheme unless and until she also succeeded in modifying the Plan under § 1329.[12]

### B.    Counts I and II

The analysis is less straightforward as to Counts I and II.  In Count I, the Trustee demands under § 544(a) that the Mortgage be avoided; and in Count II, she objects to Wells Fargo's proof of claim insofar as it asserts secured status, demanding that, in view of the avoidance requested in Count I, the claim be allowed only as an unsecured claim.  The Plan does not deal directly with Wells Fargo's claim as a whole.  It quantifies only the arrearage portion of the claim.  Because the Debtors elected to treat Wells Fargo's claim under § 1322(b)(5), the so-called "cure and maintain" option, it was unnecessary, for purposes of that treatment, for the plan to quantify the claim or to determine the extent to which it was secured or unsecured.[13]

Nonetheless, § 1327(b) and (c) of the Bankruptcy Code specify certain default effects of confirmation that must inform the interpretation of the Plan and Confirmation Order.  Subsection (b) states: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a

---

[12] Absent modification of the Plan, the effect of prevailing on Counts I and II would, at the end of the day, be to redistribute the Mortgage's value from Wells Fargo to the Debtors, bypassing creditors entirely, regardless of whether the Debtors could claim that value as exempt.  At present they have asserted no claim of exemption as to their interest in the Property, but because of the Mortgage, there has been no equity in the Property to exempt.

[13] Though the cure and maintain option is most often elected for secured claims, § 1322(b)(5) does not itself limit that treatment to secured claims but expressly indicates that it may be applied as well to unsecured claims.  11 U.S.C. § 1322(b)(5) (permitting a chapter 13 plan to provide for "the curing of any default within a reasonable time and maintenance of payments while the case is pending *on any unsecured claim or secured claim* on which the last payment is due after the date on which the final payment under the plan is due"(emphasis added)).  Other provisions of chapter 13 may nonetheless prevent confirmation of a plan that elects that treatment for an unsecured claim:  among others, § 1325(a)(3) (requiring that the plan has been proposed in good faith) and (a)(4) (requiring that the value to be distributed on each allowed unsecured claim is not less than would be paid on that claim if the estate were liquidated under chapter 7).

17

plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b).  Subsection (c) states: "Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327(c).  By operation of these provisions, unless the plan or confirmation order provides otherwise, property of the bankruptcy estate—which in this case undisputedly includes the Property—will, upon confirmation, (i) vest in the debtor and (ii) upon vesting in the debtor, be free and clear of any claim or interest of any creditor provided for by the plan. Therefore, by default or otherwise, a confirmed chapter 13 plan necessarily does determine the status of any lien on property of the estate.

Accordingly, in this case, the Plan indicated that no secured claim was being modified, and the Confirmation Order specified that Wells Fargo is retaining its lien on the Property.[14]  The Plan and Confirmation Order thus did expressly deal with the issue of whether Wells Fargo would retain its Mortgage.  Counts I and II, by asserting that Wells Fargo's mortgage should be avoided and its claim be deemed unsecured, now seek a contradictory result on the same matter.  The Confirmation Order would thus appear to preclude Counts I and II.

The Trustee advances three arguments for concluding otherwise.  She first argues that the avoidability of a lien under § 544(a) is usually adjudicated by adversary complaint, not by the confirmation of a chapter 13 plan; the plan and its confirmation process may be used for that purpose, but unless a plan provides clear notice to the contrary, the plan will not be construed to have preclusive effect on an avoidance claim, and this plan did not provide the requisite notice.  The Court agrees that the usual and ordinary process for determining the avoidability of a lien under § 544(a) is by adversary

---

[14] By language that is standard in chapter 13 confirmation orders in this district, the Confirmation Order provided as follows: "Unless otherwise ordered by the Court, all property of the estate as defined in U.S.C. §§ 541 and 1306 . . . shall remain property of the estate during the term of the plan and shall vest in the debtor(s) only upon discharge."  This language deferred the vesting of the property in the Debtors but did not obviate the need to specify whether, upon revestment in the Debtors, the Property would remain subject to the Wells Fargo Mortgage.

18

proceeding. *See* Fed R. Bankr. P. 7001(2) and (9) (a proceeding to determine the validity, priority, or extent of a lien, and a proceeding to obtain a declaratory judgment regarding the same, are adversary proceedings). However, § 1327(c) makes clear that a confirmation proceeding, too, is one in which the continuation of a secured creditor's lien is put in issue. The Plan itself specified that no secured claim was being modified, and the Confirmation Order, which the Trustee herself prepared as a proposed order, so declared. The Plan and the process employed did not fail to put the Trustee and creditors on notice that, if cause existed for Wells Fargo not to retain its Mortgage, it needed to be voiced in opposition to confirmation.[15] Moreover, even if the process employed here were inappropriate (it was not), the Supreme Court has made clear that a confirmation order that grants relief that should properly have been sought by adversary complaint is nonetheless not void, provided the affected party had notice of the filing and content of the plan. *United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367 (2010). The Trustee does not contend that she lacked notice of the filing or content of the Plan.

Second, the Trustee contends that a judgment in her favor on Counts I and II would not impair, destroy, challenge, or invalidate the enforceability or effectiveness of the confirmed Plan. This statement, however, cannot be squared with the Confirmation Order's declaration that Wells Fargo is retaining its lien. In that particular, the Confirmation Order directly contradicts the relief sought in Counts I and II.

Third, the Trustee argues that by establishing a two-year statute of limitations in 11 U.S.C. § 546(a)[16] for a trustee to bring an avoidance action under § 544, Congress intentionally excluded these

---

[15] The avoidability of the lien itself could still have been determined in an adversary proceeding. The Court could defer confirmation until the adversary proceeding was completed. In the alternative, a confirmation order could enter that provides for the contingency of later avoidance.

[16] Section 546(a) states:
> An action or proceeding under section 544, 545, 547, 548, or 553 of this title
> may not be commenced after the earlier of--
> > (1) the later of--
> > > (A) 2 years after the entry of the order for relief; or

19

actions from the binding effect of a confirmation order.  This argument fails because a statute of limitations is just a statute of limitations.  I am aware of no rule, and the Trustee has cited none to me, that a judgment is not binding on a party simply because it was obtained before passage of the deadline for bringing an action of the kind that resulted in the judgment.  The establishment of a deadline for bringing an avoidance action does not prevent—and cannot be construed as evidence of Congressional intent to prevent—the issue of avoidance relief from being joined, and adjudicated preclusively, before the deadline.

Having rejected each of the Trustee's arguments, I conclude that the Confirmation Order is preclusive as to Counts I and II.

**CONCLUSION**

On the uncontroverted facts, the Confirmation Order precludes the relief the Trustee seeks in all four counts of her complaint.[17]  Wells Fargo is therefore entitled to judgment as a matter of law.  A separate order of dismissal will enter accordingly.

Date:  October 9, 2012                              _____
                                                    Frank J. Bailey
                                                    United States Bankruptcy Judge

---

        (B) 1 year after the appointment or election of the first
        trustee under section 702, 1104, 1163, 1202, or 1302 of this
        title if such appointment or such election occurs before the
        expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

[17] Res judicata includes both claim preclusion and issue preclusion.  *Dennis v. Rhode Island Hosp. Trust*, 744 F.2d 893, 898 (1st Cir. 1984) (noting "the two different aspects of 'res judicata'").  I regard the Motion for Summary Judgment as having placed both types of preclusion in issue.  However, in reaching my conclusion on the Motion for Summary Judgment, I have relied entirely on claim preclusion, both because Wells Fargo did not brief any particular point of issue preclusion, and because, in view of my conclusion as to claim preclusion, it is unnecessary to decide any matter of issue preclusion.  My silence on issue preclusion should not be construed as a determination that the Confirmation Order has no *issue* preclusive effect on the Trustee's complaint.